SARAH KATE HEILBRUN (S.B. # 228660)
ABBY SULLIVAN ENGEN (S.B. # 270698)
HALEYNELSON & HEILBRUN, LLP
436 14th Street, Suite 716
Oakland, CA 94612
Telephone: (510) 868-0633
Facsimile: (510) 894-8484
skh@hnhimmigration.com
*Attorneys for Plaintiffs Esthefany Chaparro Navarro &
Manuel Morales Rodriguez*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ESTHEFANY CHAPARRO NAVARRO and MANUEL MORALES RODRIGUEZ,<br><br>Plaintiffs<br><br>vs.<br><br>DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; ELAINE DUKE, Acting Secretary of Homeland Security; JAMES MCCAMENT, Acting Director, United States Citizenship and Immigration Services; LAURA B. ZUCHOWSKI, Director, Vermont Service Center, and RON ROSENBERG, Chief, Administrative Appeals Office,<br><br>Defendants. | Case Number: _____<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT AND PETITION FOR WRIT OF MANDAMUS<br><br>Administrative Procedure Act Case |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT AND PETITION FOR WRIT OF MANDAMUS**

*Complaint*

1

# INTRODUCTION

Plaintiffs, Esthefany Chaparro Navarro ("Ms. Navarro") and Manuel Morales Rodriguez ("Mr. Morales") bring this action for judicial review of the revocation by United States Citizenship and Immigration Services ("USCIS") of Ms. Navarro's previously approved Petition for U Nonimmigrant Status, and the agency's consequent denial of derivative U nonimmigrant status to Mr. Morales.

Ms. Navarro is a citizen and national of Mexico who has lived in San Francisco, California since she was seven years old. Mr. Morales is Ms. Navarro's father. At age fourteen, Ms. Navarro was the victim of a felony robbery in San Francisco. Ms. Navarro cooperated fully in the San Francisco Police Department's investigation and the San Francisco District Attorney's Office's prosecution of the crime.

Due to her status as a victim of a serious crime who had cooperated with the police and prosecution, Ms. Navarro became eligible to apply for a form of lawful immigration status called U nonimmigrant status. After three years, barring certain disqualifications not applicable to Ms. Navarro, noncitizens granted U nonimmigrant status can apply to adjust their status to that of Lawful Permanent Residents in the United States, thus paving a pathway to citizenship. Additionally, applicants for U nonimmigrant status may petition for certain family members, who may be granted U nonimmigrant status as derivative applicants.

Following the robbery, Ms. Navarro applied for and received U nonimmigrant status. She then filed a petition on Mr. Morales's behalf for derivative U nonimmigrant status. Inexplicably, and roughly three years following its initial granting of Ms. Navarro's petition, USCIS revoked her status and denied her father's petition. As grounds for the revocation, USCIS reversed course

and stated that the initial approval had been "in error" because Ms. Navarro was not, in fact, the victim of a qualifying crime so as to render her eligible for a grant of U nonimmigrant status.

Since the revocation of her U nonimmigrant status, Ms. Navarro also has been denied an adjustment of her status to that of a Lawful Permanent Resident. USCIS's revocation eliminated Ms. Navarro's and Mr. Morales's sole pathway to long-term lawful immigration status.

## **JURISDICTION AND VENUE**

1.      By way of this Complaint, Ms. Navarro and Mr. Morales challenge USCIS's October 7, 2015, revocation of its prior approval of Ms. Navarro's Petition for U Nonimmigrant Status. Ms. Navarro appealed the revocation to USCIS's Administrative Appeals Office ("AAO"), which dismissed her appeal. Because the dismissal of Ms. Navarro's appeal amounts to a final agency action, Plaintiffs are entitled to judicial review under 28 U.S.C. § 1331 and 5 U.S.C. §§ 702 and 704.

2.      This action arises under the Constitution of the United States; the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*; and the Administrative Procedure Act ("APA"), 5 U.S.C. § 501 *et seq.*

3.      Jurisdiction is proper under 28 U.S.C. § 1331 (federal question); 5 U.S.C. § 704 (Administrative Procedure Act); 28 U.S.C. § 1361 (federal mandamus statute); and 28 U.S.C. § 2201 and 2202 (relating to federal courts' authority to fashion appropriate remedies).

4.      Venue lies in this District pursuant to 28 U.S.C. § 1391(e)(1) because this is a civil action, Defendants are federal agencies and employees thereof, Plaintiffs reside in this District, and the action does not involve real property.

*Complaint*

**INTRADISTRICT ASSIGNMENT**

5.      Pursuant to Civil L.R. 3-2(c) and 3-5(b), as this action arises in the County of San Francisco, assignment to the San Francisco or Oakland Divisions is proper.

**PARTIES**

6.      Plaintiff Esthefany Chaparro Navarro ("Ms. Navarro") is a native and citizen of Mexico who resides in San Francisco, California.

7.      Plaintiff Manuel Morales Rodriguez ("Mr. Morales") is a native and citizen of Mexico who resides in San Francisco, California. He is the father of Ms. Navarro.

8.      The Department of Homeland Security ("DHS") is a federal agency charged with responsibility for the implementation and administration of the relevant provisions of the INA.

9.      Defendant United States Citizenship and Immigration Services ("USCIS") is a sub-agency within DHS and is responsible for adjudicating petitions for U nonimmigrant status. *See* 8 U.S.C. § 1101(a)(15)(U) (2014) (delegating responsibility for resolving U nonimmigrant petitions to Secretary of DHS); 8 C.F.R. § 214.14(c)(1) (2016) (allocating jurisdiction over U nonimmigrant petitions to USCIS).

10.      Defendant Elaine Duke is the Acting Secretary of DHS. Defendant Duke is sued in her official capacity.

11.      Defendant James McCament is the Acting Director of USCIS. Defendant McCament is sued in his official capacity.

12.      Defendant Laura B. Zuchowski is the Director of USCIS's Vermont Service Center ("VSC"), the USCIS office that handled all petitions for U nonimmigrant status at the time Ms. Navarro submitted hers. On information and belief, Defendant Zuchowski has

*Complaint*

4

supervisorial and managerial authority over all VSC employees who adjudicate such petitions. Defendant Zuchowski is sued in her official capacity.

13.     Defendant Ron Rosenberg is the Chief of USCIS's Administrative Appeals Office ("AAO"), the USCIS office that decides administrative appeals of U nonimmigrant visa applications. On information and belief, Defendant Rosenberg has supervisorial and managerial authority over all AAO employees who adjudicate appeals.  Defendant Rosenberg is sued in his official capacity.

<u>**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**</u>

**<u>The Robbery</u>**

14.     On February 25, 2010, Ms. Navarro—then fourteen years old—was the victim of a robbery in San Francisco, California. Ms. Navarro was riding the street car in San Francisco. She was wearing three necklaces, one of which she describes as "pretty thick" as it was a man's necklace, and her purse was strapped over her neck and shoulder. The perpetrator grabbed Ms. Navarro's purse and three necklaces, and Ms. Navarro responded by resisting and pulling away. The perpetrator pulled with such force that all three necklaces broke, and he proceeded to depart the train running with Ms. Navarro's necklaces.

15.     Ms. Navarro and her younger sister exited the train and attempted to chase the perpetrator. Ms. Navarro called the police, who arrived on scene shortly thereafter and arrested the suspect, Johnny Jones. At the police station, Ms. Navarro identified Mr. Jones, who on March 2, 2010 was formally charged with misdemeanor child endangerment and felony robbery.

16.     On August 10, 2011, the San Francisco District Attorney's Office amended the criminal complaint against Mr. Jones, replacing the misdemeanor charge with a felony child endangerment charge.

17.     Ultimately, Mr. Jones pled guilty to a misdemeanor offense pursuant to a plea agreement, and the criminal case was closed.

18.     Following the robbery, Ms. Navarro became depressed and acutely afraid. She had regular nightmares and her performance in school suffered. She displayed serious depressive symptoms, including suicidal ideation. She was treated with individual and family therapy from August 2010 to January 2011, and was diagnosed with depressive disorder and post-traumatic stress disorder.

**U Nonimmigrant Status and Qualifying Criminal Activity**

19.     Congress created U nonimmigrant status with the passage of the Victims of Trafficking and Violence Protection Act in October 2000. The purpose of the legislation was to encourage noncitizen victims of crime to report such crime to, and cooperate with, law enforcement. Through the creation of U nonimmigrant status, Congress intended to strengthen the ability of law enforcement agencies to investigate and prosecute cases of domestic violence, sexual assault, trafficking of aliens and other crimes while, at the same time, offer protection to victims of such crimes. The Board of Immigration Appeals, an administrative agency charged with interpreting the INA, views U nonimmigrant status as "a transitional step on the path to lawful permanent residency" and notes that "without a prospect of a path to lawful permanent resident status, [noncitizens] will be much less likely to emerge from the shadows and risk exposing themselves to the attention of law enforcement officials, even for their own

protection." *In re Alejandro Garnica Silva*, A-098-269-615 at 6, 8 (BIA June 29, 2017) (unpublished).

20.     USCIS has sole jurisdiction over all petitions for U nonimmigrant status and must approve such a petition if the applicant is admissible under the Immigration and Nationality Act ("INA") and otherwise satisfies the statutory and regulatory criteria for eligibility for U nonimmigrant status. 8 U.S.C. § 1101(a)(15)(U)(i) (2014); 8 C.F.R. § 214.14(c)(1), (c)(5)(i) (2016).

21.     Approval of a U nonimmigrant petition by USCIS provides a noncitizen with lawful status in the United States for up to four years as well as employment authorization. A noncitizen with U nonimmigrant status who has been continuously present in the United States for three years, may apply to adjust her status to that of a Lawful Permanent Resident. 8 U.S.C. § 1255(m) (2008).

22.     Under the U nonimmigrant status provisions of the INA and Code of Federal Regulations, the parent of a noncitizen granted U nonimmigrant status is eligible for such status as a derivative beneficiary, as long as the primary applicant is under 21 years of age at the time of application. 8 U.S.C. § 1101(a)(15)(U)(ii)(I) (2014); 8 C.F.R. § 214.14(a)(10) (2016).

23.     The INA sets forth a list of categories of qualifying criminal activity that form the basis for eligibility for U nonimmigrant status. 8 U.S.C. § 1101(a)(15)(U)(iii) (2014). To be eligible for U nonimmigrant status, a noncitizen must be the victim of criminal activity described in section 1101(a)(15)(U)(iii); must have suffered substantial mental or physical abuse as a result of the criminal activity; must possess information concerning the criminal activity; and a law enforcement official must certify that the noncitizen has been, is being, or is

likely to be helpful in the investigation or prosecution of the crime. 8 U.S.C. §

1101(a)(15)(U)(i)(I)-(IV) (2014).

24.    The INA lists numerous criminal offenses that may form the basis of a petition for

U nonimmigrant status, and further states that "any similar activity" also satisfies the Act's

requirements. 8 U.S.C. § 1101(a)(15)(U)(iii) (2014). This provision's implementing regulation

clarifies that "[t]he term 'any similar activity' refers to criminal offenses in which the nature and

elements of the offenses are substantially similar to the statutorily enumerated list of criminal

activities." 8 C.F.R. § 214.14(a)(9) (2016). When this rule was published in the Federal

Register, its statement of basis and purpose[1] explained: "The rule's definition of 'any similar

activity' takes into account the wide variety of state criminal statutes in which criminal activity

may be named differently than criminal activity found on the statutory list, while the nature and

elements of both criminal activities are comparable." New Classification for Victims of

Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53,014 (Sept. 17,

2007).

25.    The INA does not specifically list "robbery" as a qualifying crime for purposes of

U nonimmigrant status. However, it lists "felonious assault," an offense which does not exist

under California law.

26.    Robbery is a felony under California law. Cal. Penal Code § 211. Under

California law, robbery is a compound crime comprised of all the elements of theft and assault.

*People v. Sutton*, 35 Cal. App. 3d 264, 270 (Cal. Ct. App. 1973).

---

[1] All new rules published in the Federal Register must include a "statement of basis and purpose"
reflecting the agency's consideration of all relevant matter presented during the public comment
period. 5 U.S.C. § 553(c) (1966).

*Complaint*

8

**Federal Agencies Authorized to Grant, Deny, and Revoke U Nonimmigrant Status**

27.     The introductory provisions of the INA charge the Secretary of Homeland Security with the administration and enforcement of all laws relating to immigration and nationality, "except insofar as . . . such laws relate to the powers, functions, and duties conferred upon the President, Attorney General, [State Department], or diplomatic or consular officers." 8 U.S.C. § 1103(a)(1) (2009). The Secretary of Homeland Security is authorized to promulgate regulations "as he deems necessary for carrying out his authority" under the INA. *Id.* § 1103(a)(3).

28.     The INA delegates authority to adjudicate U nonimmigrant status petitions to DHS, which in turn assigns this duty to its sub-agency, USCIS. 8 U.S.C. § 1101(a)(15)(U) (2014); 8 C.F.R. § 214.14(c)(1) (2016). Approval of such a petition is mandatory, unless a ground of inadmissibility, as defined under 8 U.S.C. § 1182(a), applies to the applicant. *See* 8 U.S.C. §§ 1101(a)(15)(U) & 1182(d)(14) (2014); 8 C.F.R. § 214.14(c)(5)(i) (2016). DHS has discretion to waive nearly all grounds of inadmissibility that may apply, if it determines a waiver to be in the public or national interest. 8 U.S.C. § 1182(d)(14) (2013); 8 C.F.R. § 212.17(b)(1) (2011).

29.     Once a noncitizen receives U nonimmigrant status, the INA authorizes DHS to broaden or expand such status in two primary respects: (1) DHS has authority to extend the statutorily prescribed maximum period for U nonimmigrant status if certain conditions are met, 8 U.S.C. § 1184(p)(6) (2015); and (2) DHS has authority to adjust the status of a recipient of U nonimmigrant status to that of a Lawful Permanent Resident, 8 U.S.C. § 1255(m)(1) (2008).

30.     Nowhere does the INA confer authority upon DHS to revoke or otherwise diminish a noncitizen's U nonimmigrant status. The INA's silence as to DHS's authority to

revoke approval of a U nonimmigrant status petition is notable in light of the fact that the Act expressly authorizes DHS to revoke its approval of other types of petitions. *See* 8 U.S.C. § 1155 (2004) (authorizing DHS to revoke for "good and sufficient cause" the approval of any petition approved under section 1154, which governs family- and relative-based petitions for numerous categories of *immigrant*—as opposed to nonimmigrant—status).

31.     In addition to lacking express statutory authority to revoke a prior grant of U nonimmigrant status, DHS is bound by Ninth Circuit case law rejecting the notion that an agency has implicit authority to take away any benefit it has express authority to grant. *See Nijjar v. Holder*, 689 F.3d 1077, 1084 (9th Cir. 2012). In *Nijjar*, the court held that "there is no general principle that what one can do, one can undo," and rejected DHS's argument that it had authority to revoke a grant of asylum. *Id.* (quotation marks and citation omitted).

32.     Notwithstanding the fact that the INA does not confer authority upon DHS or any of its sub-agencies to revoke a prior grant of U nonimmigrant status, federal regulations purport to authorize USCIS to effect such a revocation. 8 C.F.R. § 214.14(h) (2016). The regulations set forth a process for revocation on notice if USCIS determines that any of the following factors are present: (1) the certifying law enforcement official withdraws or disavows the previous certification; (2) approval of the petition was in error; or (3) there was fraud in the petition. § 214.14(h)(2)(i)(A)-(C). Such a revocation may be appealed to USCIS's Administrative Appeals Office within 30 days. § 214.14(h)(3).

**USCIS Vermont Service Center's Adjudication of U Nonimmigrant Petitions**

33.     At the time Ms. Navarro filed her Petition for U Nonimmigrant Status, all such petitions were handled by USCIS's Vermont Service Center ("VSC").

34.     On information and belief, at the time Ms. Navarro filed her Petition for U Nonimmigrant Status, the VSC routinely approved such petitions where robbery was the qualifying criminal activity, provided all other requirements for approval were satisfied. On information and belief, such petitions were approved on grounds that the crime of robbery was "substantially similar" to and/or in the same "category" as the enumerated crime of "felonious assault." *See* 8 C.F.R. § 214.14(a)(9) (2016) (stating that "qualifying criminal activity" includes crimes whose nature and elements are "substantially similar" to the INA's enumerated crimes); New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53,014 (explaining that "[t]he statutory list of qualifying criminal activity . . . is not a list of specific statutory violations, but instead a list of general categories of criminal activity.").

35.     On information and belief, in or around late 2014 or early 2015, VSC reversed its prior policy of approving U nonimmigrant status petitions involving robberies and instead began denying such petitions because they did not establish a qualifying criminal activity.

36.     On information and belief, the VSC does not make available to the public its written policies or guidance documents for USCIS officers who are responsible for adjudicating U nonimmigrant petitions, including any policies specific to petitions involving robberies.

37.     The VSC holds annual meetings with stakeholders during which VSC staff share information they believe will be helpful to attorneys and other stakeholders representing or working with U nonimmigrant petitioners.

38.     During one such meeting on September 18, 2015, stakeholders expressed concerns about what they perceived as a marked increase in denials of petitions for U nonimmigrant status where robbery was the underlying crime. VSC representatives responded

*Complaint*

11

that VSC did not consider a robbery not involving a weapon to be qualifying criminal activity. On information and belief, USCIS never publicly articulated or documented this position prior to the September 18, 2015, meeting.

**Ms. Navarro's Petition for U Nonimmigrant Status**

39.     On December 20, 2011, Ms. Navarro submitted Form I-918, Petition for U Nonimmigrant Status, to the VSC.

40.     Attached to Ms. Navarro's Petition was an I-918 Supplement B, U Nonimmigrant Status Certification, signed on September 23, 2011 by Maria Bee, the San Francisco District Attorney's Office Chief of Victim Services. Ms. Bee certified that on February 25, 2010, Ms. Navarro was the victim of a felonious assault and identified the suspect, who was then charged. Ms. Bee further certified that no further assistance was needed from Ms. Navarro, and that she would notify USCIS if Ms. Navarro unreasonably refused to cooperate with any further investigation or prosecution.

41.     Ms. Navarro cooperated fully with the San Francisco Police and District Attorney's investigation and prosecution of the robbery.

42.     USCIS granted Ms. Navarro's Petition on October 1, 2012, thereby conferring U nonimmigrant status that would remain valid until September 30, 2016.

43.     A year and a half later, on June 13, 2014, USCIS sent to an outdated address for undersigned counsel a Notice of Intent to Revoke ("NOIR") its grant of U nonimmigrant status. The NOIR cites 8 C.F.R. § 214.14(h) as grounds for the intended revocation, stating that the agency has determined that its grant of U nonimmigrant status was "in error." The NOIR goes on to explain that the supporting evidence submitted along with Ms. Navarro's Petition for U Nonimmigrant Status does not demonstrate that she was a victim of felonious assault. The

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOIR references the I-918, Supplement B's statement that the officer who took the police report of the robbery noted no injuries; the police report's general description of the robbery; and Ms. Navarro's refusal of medical treatment following the robbery. Conspicuously missing from USCIS's NOIR was any explanation as to why it had changed its position.

44.     On August 18, 2014, undersigned counsel received a phone call from a USCIS representative, who stated that the June 13, 2014, NOIR had been returned as undeliverable and received by USCIS on June 30, 2014. Undersigned counsel provided updated contact information, and USCIS issued a new, substantively identical NOIR dated September 16, 2014.

45.     In response to USCIS's NOIR, Ms. Navarro argued that revocation was unwarranted and submitted additional evidence, case law, and briefing. Specifically, Ms. Navarro argued that robbery under California law was "substantially similar" to the enumerated crime of felonious assault.

46.     Unpersuaded by Ms. Navarro's arguments, USCIS issued a Notice of Revocation on October 7, 2015, largely supplying the same reasoning as grounds for the revocation as it originally supplied in the NOIR. USCIS acknowledged the evidence, case law, and briefing that Ms. Navarro submitted in response to the NOIR but concluded that "what happened to you is not substantially similar to felonious assault."

47.     Ms. Navarro appealed the revocation to USCIS's Administrative Appeals Office ("AAO"). On appeal, Ms. Navarro argued that both robbery and felony child endangerment were substantially similar to felonious assault.

48.     In support of her appeal, Ms. Navarro submitted a second I-918, Supplement B,[2] wherein Jacqueline Ortiz, Deputy Chief of Victim Services for the San Francisco District Attorney's Office, certified that: (1) Ms. Navarro was the victim of a felonious assault; (2) the applicable statutory citations were felony robbery under California Penal Code section 211 and felony child endangerment under section 273a(a); and (3) Ms. Navarro possessed information about the crime and had been helpful in the investigation and prosecution.

49.     In a non-precedent decision dated November 8, 2016, the AAO dismissed Ms. Navarro's appeal. The AAO acknowledged that its inquiry was not fact-based, but rather based on the elements of the offense, and concluded that the elements of robbery were not sufficiently similar to the elements of felonious assault.

50.     In its denial, the AAO acknowledged that the regulation purporting to govern the process for revoking U nonimmigrant status requires USCIS to consider all relevant evidence. However, the AAO declined to consider the second I-918, Supplement B listing felony child endangerment as one of the statutory citations applicable to the criminal activity, stating that it had no authority to consider the Supplement because the certifying official signed it *after* the filing of the petition, and as such it did not conform to the regulation governing application procedures for U nonimmigrant status.

51.     Finally, in response to Ms. Navarro's argument that USCIS lacked statutory authority to revoke its previous approval of a petition for U nonimmigrant status, the AAO cited to 8 C.F.R. § 214.14(h) and concluded that the regulation authorized the revocation.

---

[2] Appellate review by the AAO is not limited to the record before USCIS, as the AAO permits appellants to submit additional evidence in support of their appeals. *See* USCIS, Notice of Appeal or Motion, *available at* https://www.uscis.gov/i-290b (follow "Instructions for Form I-290B" link).

*Complaint*

14

**Mr. Morales's Derivative Petition**

52.    On April 8, 2013, when she was seventeen years old, Ms. Navarro submitted on her father Mr. Morales's behalf Form I-918A, Petition for Qualifying Family Member of U-1 Recipient.

53.    In support of Mr. Morales's application, Ms. Navarro submitted her own letter as well as the sworn declarations of Mr. Morales and his wife, Ms. Navarro's mother, all attesting to the closeness of Mr. Morales's relationship with his wife and children and the crucial support he provides for his family.

54.    Ms. Navarro's mother explained that Mr. Morales had supported Ms. Navarro after the robbery by accompanying her when she went out in public, because she was perpetually afraid. Additionally, Mr. Morales accompanied Ms. Navarro to all court hearings for the robbery case. Mr. Morales expressed his desire to remain in the United States with his daughter, his wife, and their other three children who were born in the United States.

55.    Ms. Navarro also disclosed that Mr. Morales was subject to a ground of inadmissibility under the INA, therefore requiring a waiver before he could be granted derivative U nonimmigrant status. As grounds for the waiver, Mr. Navarro submitted numerous letters demonstrating his good moral character such that a waiver would be in the public interest.

56.    On September 25, 2015, USCIS denied Ms. Navarro's petition for derivative U nonimmigrant status for Mr. Morales. As grounds for the denial, USCIS stated that approval of Ms. Navarro's U nonimmigrant status had been revoked on January 26, 2015, rendering Mr. Morales ineligible for derivative status. USCIS further stated that it would not assess whether a waiver was appropriate, as Mr. Morales was ineligible for U nonimmigrant status.

57.     At the time of filing of this Complaint, Ms. Navarro is 22 years old, so Mr. Morales no longer is a qualifying family member eligible to receive U nonimmigrant status as a derivative beneficiary to Ms. Navarro's application, absent this Court's intervention.[3]

## CAUSES OF ACTION

### COUNT ONE
### Administrative Procedure Act – Ultra Vires

58.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as though fully set forth herein.

59.     The INA delegates authority to DHS to adjudicate—i.e. approve or deny—petitions for U nonimmigrant status, but neither DHS nor USCIS has statutory authority to revoke a previous approval. In purporting to authorize USCIS to revoke a noncitizen's U nonimmigrant status, 8 C.F.R. § 214.14(h) exceeds this congressional delegation of authority.

60.     USCIS's revocation of Ms. Navarro's U Nonimmigrant Status, as set forth in its October 7, 2015 NOR, and affirmed in the AAO's November 8, 2016, dismissal of Ms. Navarro's appeal, must be set aside because it amounted to unlawful agency action in excess of statutory jurisdiction and authority, in violation of 5 U.S.C. § 706(2)(C).

### COUNT TWO
### Administrative Procedure Act – Arbitrary and Capricious Reversal of Prior Policy

61.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as though fully set forth herein.

---

[3] A principal applicant requesting derivative U nonimmigrant status for her parent must file her application before age 21. 8 U.S.C. § 1101(a)(15)(U)(ii)(I) (2014). Even if the principal applicant turns 21 before her petition is adjudicated, the parent remains eligible for derivative status as long as the application remains pending. 8 U.S.C. § 1184(p)(7)(B) (2015).

*Complaint*

62.     Sometime prior to September 18, 2015, USCIS departed from its longstanding practice of approving petitions for U nonimmigrant status whose underlying offense was felony robbery. USCIS failed to provide notice, supply a reasoned analysis, or in any way explain such departure.

63.     As a result of this departure, USCIS revoked its previous approval of Ms. Navarro's Petition for U Nonimmigrant Status four years after the fact.

64.     USCIS's unreasoned departure from its longstanding policy was arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A), and its consequent revocation of Ms. Navarro's petition must be set aside. *See INS v. Yang*, 519 U.S. 26, 32 (1996) (holding that irrational departure from previously settled agency policy could amount to agency action that is arbitrary, capricious, or an abuse of discretion).

## COUNT THREE
### Administrative Procedure Act –Agency Action Not in Accordance with Law
### (Retroactive Application of Policy Change)

65.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as though fully set forth herein.

66.     USCIS lacks express statutory authority to promulgate retroactive regulations or otherwise apply policy retroactively.

67.     An agency action having retroactive effect is unlawful unless the agency's interest in retroactive application outweighs the regulated party's interest in being able to rely on the previous policy. *Montgomery Ward & Co., Inc. v. FTC*, 691 F.2d 1322, 1333 (9th Cir. 1982). Among the Court's considerations in making this determination are: (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well-established practice or merely attempts to fill a void in an unsettled area of law, (3) the

17

1
2
3

extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard. *Id.* at 1333-34.

4
5
6
7

68.     The *Montgomery Ward* factors listed above tip decidedly in Ms. Navarro's favor, as her interest in being about to rely on the previous policy vastly outweighs USCIS's interest in retroactive application of the previous policy.

8
9
10

69.     USCIS's retroactive application of an unwritten policy change, three years after approval of Ms. Navarro's petition, was not in accordance with law, in violation of 5 U.S.C. § 706(2)(A), and must be set aside.

11
12
13

**COUNT FOUR**
**Administrative Procedure Act –Agency Action Not in Accordance with Law**
**(Agency Action in Violation of Regulation)**

14
15

70.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as though fully set forth herein.

16
17
18
19
20
21

71.     The regulation purporting to authorize USCIS to revoke a prior grant of U nonimmigrant status describes the process for objecting to a NOIR as follows: "The alien may submit evidence in rebuttal within 30 days of the date of the notice [of intent to revoke]. USCIS shall consider all relevant evidence presented in deciding whether to revoke the approved petition for U nonimmigrant status." 8 C.F.R. § 214.14(h)(2)(ii) (2016).

22
23
24
25
26

72.     Notwithstanding USCIS's regulatory directive to "consider all relevant evidence presented" in determining whether to revoke a previous grant of U nonimmigrant status, the AAO refused to consider the I-918, Supplement B that Ms. Navarro proffered in support of her appeal.

27
28

73.     In violating its own regulation requiring consideration of all evidence presented in response to a NOIR, USCIS caused Ms. Navarro prejudice.

74.     The AAO's refusal to consider the second I-918, Supplement B was not in accordance with law, in violation of 5 U.S.C. § 706(2)(A).

**COUNT FIVE**
**Fifth Amendment to the United States Constitution – Procedural Due Process**

75.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as though fully set forth herein.

76.     As USCIS's approval of an application for U nonimmigrant status is mandatory (provided that the applicant has satisfied the statutory and regulatory requirements), Ms. Navarro was entitled, as a matter of right, to the approval of her petition. She therefore had a constitutionally protected interest in maintaining U nonimmigrant status unless she did something to jeopardize it.

77.     The erroneous deprivation of Ms. Navarro's continued right to maintain U nonimmigrant status caused and continues to cause tremendous risk to Ms. Navarro, Mr. Morales, and their respective partners and minor children: she and Mr. Morales risk being erroneously removed from the U.S., where they have lived for fifteen and eighteen years, respectively.

78.     USCIS's revocation of Ms. Navarro's U nonimmigrant status, notwithstanding her satisfaction of the statutory and regulatory criteria, was in violation of the Fifth Amendment's Due Process Clause.

*Complaint*

19

## COUNT SIX
### Mandamus – 28 U.S.C. § 1361

79.    Plaintiffs hereby incorporate the allegations in the preceding paragraphs as though fully set forth herein.

80.    USCIS never considered the merits of Ms. Navarro's Petition for Qualifying Family Member of U-1 Recipient, filed on Mr. Morales's behalf, because it erroneously and without authority revoked its initial grant of U nonimmigrant status to Ms. Navarro.

81.    Because USCIS's revocation of its approval of Ms. Navarro's Petition for U Nonimmigrant Status was unlawful, Mr. Morales had and continues to have a right to have USCIS consider and adjudicate the derivative petition on its merits.

82.    Within a reasonable time after the filing of the derivative petition, USCIS had and continues to have a clear duty to act on the petition.

83.    Because USCIS has unlawfully revoked Ms. Navarro's U nonimmigrant status, without which Mr. Morales has no right to derivative U nonimmigrant status, the only remedy available to Mr. Morales is for this Court to issue a writ of mandamus.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Esthefany Chaparro Navarro and Manuel Morales Rodriguez pray that this Court grant the following relief:

1)    Declare the regulation at 8 C.F.R. § 214.14(h) to be ultra vires to the Immigration and Nationality Act, and thus unlawful; or, in the alternative, declare that Defendant USCIS violated its own regulation in retroactively applying a policy change and failing to consider the second I-918, Supplement B that Ms. Navarro submitted in support of her appeal of USCIS's revocation;

*Complaint*

20

2)   Order that Defendant USCIS rescind its revocation of Ms. Navarro's Petition for
U Nonimmigrant Status;

3)   Order that USCIS reinstate Ms. Navarro's U nonimmigrant status, with original
dates of validity; or, in the alternative, order USCIS to (a) re-adjudicate Ms.
Navarro's appeal according to its policy concerning robbery offenses in effect as
of the date of the original petition, and (b) consider the second I-918, Supplement
B in its adjudication;

4)   Order USCIS to return Mr. Morales to the position in which he would have been,
but for USCIS's significant error, by acting upon the derivative petition *nunc pro
tunc*, such that the agency's decision shall be backdated to take effect within a
reasonable time after the date of Ms. Navarro's submission of the petition;

5)   Order that USCIS extend Ms. Navarro's U nonimmigrant status until adjudication
of the derivative petition of Mr. Morales is completed;

6)   Order that Mr. Morales be permitted to remain in the United States until
Plaintiffs' claims are finally resolved;

7)   Award costs and reasonable attorneys' fees under the Equal Access to Justice Act,
28 U.S.C. § 2412(b); and

8)   Grant such further relief as the Court deems just and proper.

*Complaint*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: November 2, 2017

Respectfully submitted,

/s/ Sarah Kate Heilbrun

Sarah Kate Heilbrun
Abby Sullivan Engen
HaleyNelson & Heilbrun, LLP
436 14th Street, Suite 716
Oakland, CA 94612
Telephone: (510) 868-0633
Facsimile: (510) 894-8484
skh@hnhimmigration.com

Counsel for Plaintiffs

*Complaint*

22